# Chicago and Northwestern Railway Co.

*v.*

# Fayette T. Dimick, Admr.

*Filed at Ottawa March 23, 1880—Rehearing denied September 14, 1880.*

1. Negligence—*contributory and comparative.* In an action to recover damages resulting from the alleged negligence of the defendant, if it appear that the plaintiff was himself guilty of gross negligence in respect of the injury complained of, he can not recover.

2. Or if the plaintiff has been guilty of negligence, no recovery can be had unless his negligence was slight, when compared with that of defendant, which was gross.

3. Where both parties have been guilty of negligence, a mere preponderance in degree will not render the defendant liable. So it was held an instruction did not lay down the correct rule, which declared that although the plaintiff, by his own negligence, may have in some degree contributed to the injury, yet if the negligence of the defendant was of a higher degree, or so much greater than that of the plaintiff that the negligence of the latter was slight in comparison, the plaintiff might recover.

4. Same—*of an instruction as omitting the question of care on the part of plaintiff.* Where there is evidence tending to show the plaintiff was guilty of some negligence contributing to the result complained of, so that the question of comparative negligence is involved, and the case is closely contested upon that question, every instruction given in the case which professes to lay down the grounds upon which a recovery may or may not be had, should state the rule in regard to the question of care or caution on the part of the plaintiff. It is not enough that the instructions given for the opposite party give the rule of law on the subject fully and accurately.

5.  Same—*duty of persons approaching railroad crossing.* It is the duty of a person approaching a railroad crossing upon a highway to look and listen for a train on the railroad, and it is negligence to omit that duty.

6.  Practice—*time within which motion for new trial must be made.* The statute provides that where either party desires to move for a new trial, the motion shall be made before the entry of final judgment, or during the term the judgment is entered.

7.  On the trial of a cause the jury returned a general verdict in favor of the plaintiff, and also returned several special findings on questions of fact. The court set aside the general verdict, and rendered judgment on the special findings for the defendant. On appeal that judgment was reversed and the cause remanded. Upon the reinstating of the cause in the court below that court, on motion, rendered judgment on the general verdict, in favor of the plaintiff, and thereupon, the defendant, at the same term, moved for a new trial: *Held,* the motion for a new trial was made at the same term of the entry of the judgment sought to be brought in review, and was in apt time.

8.  Same—*waiver of right to move for new trial.* Where the jury returns a general verdict in favor of the plaintiff, and also special findings upon questions of fact, and the defendant moves for judgment in his favor on the special findings, which is denied, and judgment is entered on the general verdict, for the plaintiff, the defendant does not lose his right to move for a new trial by reason of having moved for judgment in his favor on the special findings notwithstanding the general verdict.

Appeal from the Circuit Court of Rock Island county; the Hon. George W. Pleasants, Judge, presiding.

Mr. B. C. Cook, for the appellant.

Messrs. C. J. & C. C. Johnson, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action on the case, brought by appellee, administrator of the estate of Gilbert H. Dimick, deceased, against appellant, to recover damages for the death of the deceased, caused by the negligence of appellant's servants.

On the trial the jury returned a verdict in favor of plaintiff for $3500, and under the statute then in force several special findings on questions of fact were also returned. The court set aside the general verdict, and rendered judgment in favor of the defendant, on the ground that the special findings

were inconsistent with the general verdict.   From that decision the plaintiff prosecuted an appeal to this court, where the judgment of the circuit court was reversed and the cause remanded.   *Dimick* v. *Chicago and Northwestern Railroad Co.* 80 Ill. 338.

After the cause was remanded and placed upon the docket in the circuit court, the court, on motion, rendered judgment in favor of the plaintiff, on the verdict, for $3500.   The defendant then entered its motion for a new trial, which was overruled, and an appeal taken.

It appears, from the evidence contained in the record, that on the evening of July 29, 1873, between 6 and 7 o'clock, Gilbert H. Dimick, while attempting to cross appellant's road with his team and wagon, a short distance east of Morrison, collided with a freight train going east, and was killed.

The deceased owned land on each side of the road where the accident occurred; his home was but a short distance away; he was familiar with the crossing and the running of trains over the road, and on the day of the accident he had been hauling grain on a hay rack across the railroad, and when the accident occurred the deceased and one James Doyle were riding on the empty hay rack on the wagon, sitting with their faces turned towards the east, when the train came from the west.

The negligence relied upon to sustain the verdict, as we understand the record, is, first, that no bell was rung, or whistle sounded on the train when it approached the crossing; second, willow brush was allowed to grow and stand on the right of way near the crossing, which so obstructed the view that a train could not be seen approaching the crossing from the highway.

On the other hand, it is insisted by appellant that the deceased, without looking or listening for the approach of a train, with a full knowledge of the crossing and its surroundings, without any regard for his safety whatever, recklessly

drove upon the railroad crossing, and that the accident was the result of his own negligence.

So far as is shown by the testimony in this record there are but two witnesses who are able to speak in regard to the care used by the deceased to avoid danger before driving on the track. The first one, James Doyle, said: "I was riding on the wagon with Dimick, and as the horses stepped upon the crossing the train struck the wagon and threw Dimick into the culvert and killed him. I heard no bell ring or whistle sound, until just as the horses stepped upon the crossing. The regular train passed east a few minutes before we left the house. We were not looking for this train, nor listening for a train. We both sat with our faces to the east and looking in that direction."

The other witness, one Winters, on cross-examination, said: "I was on west side of highway and north side of railroad standing still by the fence; the train was then close by—one, or two, or three rods from the crossing; I told Dimick to stop, but I can't tell whether he understood me or not; his team was going on a fast step; I said, 'Stop! Don't go any further. Hold on! Stop! The train is coming. Stop!' He did not stop; I spoke loud enough so I thought he could hear; he had his face the other way; I saw the cars when I was speaking to Dimick, and heard their noise; when I spoke to Dimick I stood at the rail fence, may be a rod or two from the board fence; Dimick sat on the west side of his wagon, facing east; his servant sat on east side of wagon; was a hay rack on the wagon; no box, I think."

These were the only witnesses who seem to have been in a position to state what caution was exercised by the deceased before driving on the track, to guard against danger, and if their evidence be true, he neither looked nor listened for a train, but deliberately drove upon the crossing with his back turned to the direction from which the approaching train came. This court has often decided that it is the duty of a person about to cross a railroad track to look and listen for an

approaching train, and it is negligence to omit that duty. *St. Louis, Alton and Terre Haute Railroad Co.* v. *Manly,* 58 Ill. 300; *Illinois Central Railroad Co.* v. *Goddard,* 72 id. 568; *Chicago, Burlington and Quincy Railroad Co.* v. *Damerell,* 81 id. 450; *Chicago and Northwestern Railway Co.* v. *Hatch,* 79 id. 137.

If the deceased was guilty of gross negligence the plaintiff could not recover, or if he was guilty of negligence, no recovery could be had unless his negligence was slight when compared with that of the defendant, which was gross.

Now, while there was evidence which tended to show negligence on the part of the deceased, and which might have been regarded by the jury as sufficient to defeat a recovery, the jury were instructed on behalf of plaintiff, in Nos. 1 and 8, that a recovery might be had under the circumstances named in the instruction, leaving out of view entirely any care or caution on behalf of deceased.

The instructions are as follows:

" 1.   The court instructs the jury, that by the law of the State of Illinois, a bell of at least thirty pounds' weight, or a steam whistle, is required to be placed on each locomotive engine, and to be rung or whistled by the engineer or fireman at the distance of at least eighty rods from the place where the railroad crosses any public street or highway, and to be kept ringing or whistling until such street or highway is reached; and the corporation or owners of the railroad are liable to any party injured for all damages sustained by reason of the 'neglect to comply with such requirement."

" 8.   If the jury should find, from the evidence, that the defendant is guilty of the wrongful act, neglect or default as charged in the plaintiff's declaration, and that the same resulted in the death of Gilbert H. Dimick, then the plaintiff is entitled to recover in this action, for the benefit of the widow' and next of kin of deceased, such damages as the jury may deem, from the evidence and proofs, a fair and just compen-

sation for the pecuniary injury resulting from such death to such widow and next of kin, not exceeding $5000."

An instruction almost identical with the above was condemned in *Chicago, Burlington and Quincy Railroad Co.* v. *Harwood*, 80 Ill. 88. It may be said that the defendant's instructions gave the law on this subject accurately to the jury, but that is not enough. Where a case is close in its facts, the instructions should all state the law accurately. The jury, not being judges of law, are as likely to follow a bad instruction as a good one.

The plaintiff's ninth instruction, which undertook to state the doctrine of comparative negligence, is erroneous and calculated to mislead the jury. It was as follows:

"9. The court further instructs the jury that if they believe, from the evidence, that Gilbert H. Dimick was killed by the defendant's locomotive engine and train while he was traveling upon a highway which crossed the defendant's railroad there, although the jury may believe, from the evidence, that the deceased was himself guilty of some negligence which may have, in some degree, contributed to the injury, yet, if the jury further believe, from the evidence, that the negligence of the defendant was of a higher degree, or so much greater than that of the deceased that that of the latter was slight in comparison, the plaintiff is entitled to recover in this action."

Where both parties have been guilty of negligence, this court has never held that the mere preponderance against a defendant will render him liable. The rule, as has often been announced, is, that although the plaintiff may have been guilty of some negligence, still, if it is slight as compared with that of defendant, which is gross, a recovery may be had. *Chicago and Northwestern Railway Co.* v. *Clark*, 70 Ill. 276.

Without entering upon any discussion of the evidence, we are of opinion that the giving of these three instructions was error. It is true, the jury were fully instructed on behalf of the de-

fendant on every material question in the case, and if this was a case where there was no question in regard to the right of plaintiff to recover, we might not reverse on account of the erroneous instructions, but where a case is as close in its facts as this is, justice demands that all the instructions should be accurate.

It is, however, contended by appellee that the questions presented by appellant can not be considered by the court, for two reasons: First, the motion for a new trial was not made in time; second, that the motion for judgment on the special findings was a waiver of the right to move for a new trial. The statute provides, where either party desires to move for a new trial, that the motion shall be made before final judgment be entered, or during the term it is entered. The motion in this case was made at the term and before final judgment was rendered on the general verdict. It is true, a judgment had been entered at a previous term in appellant's favor on the special findings. At that time appellant did not want a new trial. It would have been but an idle ceremony for it then to have moved for a new trial. ⊙ No judgment had been rendered against it, and it was satisfied with the judgment of the court. When, however, that judgment was reversed, and a judgment was sought on the general verdict, then the motion was made for a new trial, and we think it was in apt time.

In regard to the next question, we perceive no reason to sustain the position that appellant waived its right to move for a new trial by moving for judgment on the special findings. Our statute is, in substance, like the statute in Indiana in regard to special findings.

The Supreme Court of Indiana, in passing upon a question similar to this, in *Brennan* v. *May*, 42 Ind. 102, said: "They were answers of the jury to particular questions of fact propounded to them, and before moving for a new trial the appellants moved for judgment in their favor on the special findings, which motion was overruled. The counsel for appellee claim that the motion first made cut off the motion for

a new trial. Several authorities are cited to show that a motion in arrest of judgment cuts off a motion for a new trial, but we are not aware of any holding that a motion for judgment in one's favor on the special finding of the jury works such a result. We think where there is a general verdict with special findings by the jury in answer to questions propounded to them, the party against whom the general verdict is returned may move for judgment in his favor on the special findings notwithstanding the general verdict, without losing his right to move for a new trial in case his motion for judgment should be overruled. The doctrine that a motion in arrest of judgment cuts off a motion for a new trial, though well settled in this State, is somewhat technical, and we are not disposed to extend it to cases of motion like that under consideration."

This case seems to be directly in point, and we have no hesitation in approving the doctrine therein announced.

For the error indicated the judgment will be reversed, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT, dissenting:

Dissenting, as I do, from the opinion of a majority of the court, I deem the case of sufficient importance to justify a full presentation of my views of the whole case. The action was brought by the administrator to recover damages resulting to the next of kin by reason of the death of Gilbert H. Dimick, who was killed by a train on defendant's road on the 29th day of July, 1873.

The statute in force at the time this cause was tried, but since repealed, provided, the court, at the request of either party, might require the jury to render a special verdict upon any fact or facts in issue in the cause, and that when the special finding of the facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly. Both parties, at the trial of this cause, submitted a number of interrogatories, to which the

jury returned specific answers. The general verdict found the issues for plaintiff.

On the coming in of the verdict, defendant moved the court for judgment in its favor on the facts specifically found by the jury in their special verdict, as requested by defendant, which motion was by the court allowed, and final judgment was rendered against plaintiff, notwithstanding the general verdict was in his favor. On plaintiff's appeal, that judgment was reversed, because it was thought, when all the special findings of fact, as well those for plaintiff as for defendant, were construed together, nothing in them was found to be inconsistent with the general verdict, and both might stand together. On the remandment of the cause the court rendered judgment for plaintiff for the sum found by the general verdict, and now defendant brings the case to this court on appeal.

The principal points made against the judgment are, first, that neither the general nor special verdict is sustained by the evidence; and second, that the court gave improper instructions at the instance of plaintiff hurtful to defendant.

The first question presented is, whether defendant ought to be allowed to prosecute its appeal after having made a motion, as was done, for judgment in its favor on the special findings of fact, notwithstanding the general verdict was for plaintiff. One reason assigned why the appeal should not be allowed is, that no motion for a new trial was made at the term at which the trial was had. This position is not tenable. No final judgment was rendered against defendant until after the reversal of the judgment against plaintiff. Of course defendant desired no new trial while that judgment stood in its favor unreversed. The motion for a new trial was made at the term at which judgment was rendered against defendant, and that, I think, was in apt time. The principle of *Constantine* v. *Foster*, 57 Ill. 40, is conclusive as to this objection.

It is said defendant, by moving for judgment at the May

term, 1874, on the special findings of fact by the jury, notwithstanding the general verdict was for plaintiff, waived its right thereafter to make a motion for a new trial, and this presents a question of some difficulty. The argument is, that after making a motion of this character, a motion for a new trial comes too late, and that the motion itself is an admission the verdict is in accordance with the weight of the evidence,— in analogy to the rule that after a motion in arrest of judgment a motion for a new trial is not allowable. It seems quite clear the making of the motion under the statute is an admission the special findings of fact were warranted by the evidence, and so this court distinctly held on the former appeal. It was there said: "Making the motion for judgment, notwithstanding the general verdict in favor of plaintiff, admits the evidence is sufficient to warrant the special findings of fact." *Dimick* v. *Chicago and Northwestern Railway Co.* 80 Ill. 338.

A party will not be permitted to stultify himself by retracting a solemn admission made on the record. As in this case, defendant admitted the special findings of fact were true, otherwise it could have had no standing in court. To permit defendant now to retract its admission on which it had a hearing in this court would be trifling with the forms of the law.

But it is otherwise as to the general verdict. There never was any admission, of record or otherwise, that the general verdict was in accordance with the evidence. The motion itself was a challenge of the correctness of the general verdict. As to the general verdict, defendant may rightfully assign for error, it is against the evidence, but as to the special findings of fact, once admitted by defendant to be true, they ought to be allowed to stand, whether they sustain or militate against the general verdict. Any other practice would allow a party to experiment as to the judgment of this court on the admission such special findings of fact are warranted by the evidence, and failing to obtain a satisfactory decision, to then say such

findings were not well found on the testimony. This he ought not to be allowed to do.

The trial was had on those counts of the declaration which charge defendant with negligence in allowing trees and brush to be standing and growing on its right of way, so as to hinder and prevent persons from discovering the approach of trains, and in not ringing a bell or sounding a whistle, as required by law. Other acts of negligence are charged in other counts of the declaration, but as there is no pretence they are sustained by any evidence, it will not be necessary to remark upon them.

Exactly what degree of care decedent observed for his personal safety can not be certainly known. At the time of the collision he was driving his team south on the highway which runs nearly or quite north and south at that point, and is crossed obliquely by defendant's road coming from the west, and bearing a little south of east. The train that collided with his wagon came from the west, and therefore approached him a little in the rear of his right side. The party that was with decedent on the wagon was offered as a witness, but defendant objected because the witness had been insane, both before and since the accident. Plaintiff admitted the fact alleged, and claimed that witness was cured. The parties then agreed to a statement that should be considered as the testimony of the witness if sworn. That testimony shows the witness heard no bell rung or whistle sounded until just as the horses stepped on the crossing. The regular train had just passed east a few moments before, and it is added they were not "looking for this train, nor listening for a train." What value ought to be attached to the testimony of this witness, I am not prepared to say. It was a question for the jury to determine.

In answer to an interrogatory propounded by defendant, the jury found decedent did look and listen for the cars while driving on the highway, before going on the track at the crossing, and that fact is one I understand defendant, by its

motion for judgment on the special findings of fact, admits was well founded on the evidence. The only findings that at all militate against this one are the findings on the seventh and eighth propositions submitted, that decedent could have heard the approach of the train had he listened at the place he was told to stop before driving on the track. But there is not the slightest evidence he heard the warning given to stop before driving on the crossing, and the jury so found. I do not understand decedent was under obligation to stop his team, if he both looked and listened for signals and could discover none. On the whole, as was the conclusion in the former opinion, the several findings on the propositions submitted tend rather to support the general verdict as to the degree of care observed by decedent for his personal safety. But if this were not so, and it were proven decedent omitted some of the usual precautions which the law enjoins upon all persons about to cross a railroad track, still his negligence in that respect at the utmost was slight in comparison with that of defendant, which was gross in regard to that which caused his death. Conceding it to be true, as alleged, that no bell was rung or whistle sounded before the train approached the crossing, and that the view the deceased would otherwise have had of the coming train was obstructed by brush standing and growing on the right of way, deceased might well have been lulled to security, and on that account failed to exercise that high degree of caution which all ought to observe for their personal safety in crossing a railroad, and especially as the train that collided was "an extra train" which was following close upon the regular train which deceased knew had just passed.

As respects the questions whether any bell was rung or whistle sounded, as the law directs shall be done, defendant waives any discussion, on account of the conflict in the testimony as to those facts, and rests the defence on propositions about which it is erroneously assumed there is no dispute.

On every material question in the case there is a disagreement.

The other principal ground of action is as to the negligence of defendant in permitting brush to grow and stand on the right of way, so as to prevent persons traveling on the highway from discovering the approach of trains from the west.

On this branch of the case it seems to me the weight of the testimony is with the general verdict. The most that can be said as to this testimony is, that it is apparently conflicting, but much of it is entirely consistent. It is true that from some points on the highway a person traveling south, as deceased was, after passing the cornfield could undoubtedly, if intent upon observing it, see the approach of a train from the west; but it is equally true that from other points on the road he could not see a coming train, on account of brush standing on the right of way. Several of the witnesses tried the experiment. Some of them, according to the stations selected, could obtain such a view as would enable them to see a train coming from the west, but others could not. One witness, who was familiar with the topography of the locality, made an examination the next day after the accident, and states that no view could be obtained until after the cornfield was passed, but between that point and the crossing there was a space where the view from the highway was "wholly obstructed" by brush standing on the right of way. The witness adds, and it seems to be a sensible view, that if a person was standing still and endeavoring to peer through the bushes he could probably discover a train, if one were coming; but a person on a wagon, or in motion, would not be likely to discover an approaching train, unless particularly called to observe it.

There is one fact testified to by the fireman, a witness called by and friendly to defendant, which is important, and is well nigh conclusive on this point in the case. After coming out of the cut west of the crossing the witness states he saw the

team going along the road and kept looking at them "until they got about down to the bushes." When he "noticed them again they were just going on to the track." There was, then, a moment of time the witness did not see the team. His explanation is, he "must have taken his eyes off them," but the better reason is, the brush on the right of way obstructed the view until the instant the team came upon the track in front of the train, when it was too late to give decedent warning that might enable him to avoid danger. The brush on the right of way was over thirteen feet high on an average. That it obstructed the view of approaching trains from the west, from the public road, when near the crossing, admits of no doubt. All the witnesses concur that had deceased seen the train just before driving on the track, there was room enough for him to have turned aside in safety; but on account of the brush near the track he did not and could not see the coming train until it was too late to avoid the fatal collision.

Under the circumstances the omission to ring the bell or sound the whistle was gross negligence on the part of the employees in charge of the train. It may well be concluded that deceased both looked and listened for signals of danger before driving on the crossing, but could hear none, because none were given, and he could see none, because the view was obstructed. Possibly deceased might have seen the train immediately after he passed the cornfield spoken of by the witnesses, but further on in the direction of the crossing he could not, unless he had been particularly called to observe it. A railroad company has no right to permit its right of way, in the vicinity of a highway crossing its track, to be in such condition that the slightest indiscretion on the part of the traveler will prove fatal.

In *Indianapolis and St. Louis Railroad Co.* v. *Smith*, 78 Ill. 112, this court said it was negligence in the company to permit or suffer weeds or anything else to grow upon its right of way to such a height as would materially obstruct the view

of the highway. The safety of persons and property alike make it necessary the company should keep its right of way free from obstructions, so that persons approaching the crossing may readily ascertain whether there is danger, and the employees in charge may be enabled to discover whether there is anything approaching the crossing. That principle has its just application to the facts of this case.

As before stated, there was a moment of time when the stoker did not see the team, and the evidence fully justifies the belief it was because of the bunches of willows growing by the side of the track that obstructed the view. I attach no importance to the fact the willows were cut down after the happening of the accident, nor as to the reason for removing them. When standing they were an obstruction, cutting off the view of the traveler, at least from some points on the highway, and were one of the principal causes of this fatal accident.

This case, in many of its facts and features, bears a most striking likeness to *Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 87 Ill. 454. The grounds of negligence on the part of the companies, in both cases, are identically the same, viz: omission to ring a bell or sound a whistle, and permitting brush to grow on the right of way that in a measure obstructed the view of the railroad from the highway. In this case the facts are much more fully established than in the case cited, and it does not seem possible that the cases can be distinguished in principle. Reference can with great propriety be made to the "Lee case" for a discussion of the principles of law applicable to the facts of the case in hand.

On a careful examination of the instructions given for plaintiff, it is not perceived they contain anything seriously hurtful to defendant. The first and eighth instructions, to which the same objection is taken, state the law correctly as expressed in the statute, and we do not understand the principle stated in the instructions is condemned in *Chicago, Burlington and Quincy Railroad Co.* v. *Harwood,* 80 Ill. 88. No doubt it could have been added with great propriety, it

must appear plaintiff was observing reasonable care for his personal safety before a recovery could be had; but that principle was fully stated in other instructions given for plaintiff.

It is not understood a party must state every fact necessary to a recovery in a single instruction. The principle defendant contends for was repeatedly and fully declared in numerous other instructions, and it is impossible the jury did not fully understand it.

It is by no means shown there is no evidence on which to predicate the second instruction for plaintiff. Facts are proven from which the jury might fairly infer decedent observed at least some of the usual precautions a prudent person would adopt before driving on the track, and that is enough to warrant the giving of the instruction. It may be there is very slight, if any, evidence on which to base one branch of the seventh instruction, but as it declares a correct principle of law, it is not believed it could have misled the jury. If the hypothetical case stated was not fully proved, it was of that character it is hardly probable the jury would be influenced by it. The ninth instruction is inartistically and curiously worded, and may not have stated the doctrine of comparative negligence with entire accuracy, but it is not perceived how it could by any possibility have been hurtful to the defence. As respects the other instructions given for plaintiff, it may be safely said they state the law applicable to the facts of the case with sufficient accuracy.

On behalf, and at the request of defendant, the court gave thirty-three instructions, stating the law in almost every conceivable way as defendant contends it is. Every principle of law that counsel insists is applicable to the facts of the case is contained in some one or more of the numerous propositions submitted, and as favorably to the theory of the defence as defendant could expect.

As no error affecting the merits of the case appears in the record, I am of opinion the judgment should be affirmed.