# The Illinois Central Railroad Company

*v.*

## George A. Gilbert, Admr.

*Filed at Ottawa June 15, 1895—Rehearing denied October 25, 1895.*

1. Master and servant—*peculiar hazards require corresponding caution.* Surrounding circumstances of peculiar hazard require a commensurate degree of care, both from the employing master and the servant, to avoid injury.

2. Negligence—*negligence, original and contributory, is for the jury.* Whether there was negligence either of the employing company or the injured servant, under the peculiar circumstances proved in this case, was properly submitted to the jury.

3. Instructions—*cannot ignore circumstances proved.* A requested instruction that if an injured railroad employee knew, or might have known, the company operated trains so as to make his employment unusually dangerous, and voluntarily continued to expose himself to such hazard in performing his duty, recovery cannot be had, is properly refused, where the peculiar circumstances calling for caution on both sides are ignored.

4. Same—*relating to measure of damage need not state rule as to negligence.* An instruction which relates solely to the measure of damage need not state the rule that the plaintiff must have exercised ordinary care. *Chicago and Northwestern Railway Co.* v. *Dimick,* 96 Ill. 42, and *North Chicago Rolling Mill Co.* v. *Morrissey,* 111 id. 645, distinguished and explained.

5. Municipal corporations—*have power, under general act, to require railroad company to ring bell.* A municipal ordinance requiring the ringing of a bell on an engine running within the limits of a city is authorized by paragraph 27, section 1, article 5, of the City and Village act, which provides that the city council may require railroad companies to provide protection against injury to persons and property in the use of such railroad.

6. Railroads—*employees of, are under the protection of municipal regulations.* Railroad employees are entitled to the same protection as other persons in crossing railroad tracks within a city in performance of their duties, under a city ordinance requiring a bell to be rung continuously.

*Illinois Central Railroad Co.* v. *Gilbert,* 51 Ill. App. 404, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Jonas Hutchinson, Judge, presiding.

This is an action by the administrator of Charles F. Gilbert, who was seventeen years old at the time of his death, to recover damages because of alleged negligence of appellant, causing the death of the intestate.

The facts, as shown by the witnesses called by both parties, and which are wholly uncontradicted, are these: At the Twenty-seventh street shops of the Illinois Central Railroad Company there were six main tracks, numbered consecutively, 1, 2, 3, 4, 5 and 6, from west to east. East of these six main tracks are many side or switching tracks. The repair shop stands east of and immediately next to track No. 6, and also stands directly opposite to the intersection of Twenty-seventh street by the west boundary line of the right of way land of the Illinois Central Railroad Company. The machine shop is situated west of track No. 1, and several hundred feet north of Twenty-seventh street. As alleged in the declaration and shown by the evidence the trains moving along the tracks at the place in question during a day averaged twenty per hour, and in the morning and at the hour Gilbert was killed—about 7:45 A. M.—they passed more frequently than at other times during the day, except the hours of the late afternoon and evening. The tracks were straight, and a person passing over the tracks from the machine shop on the west to the repair shop on the east could see north nearly to Sixteenth street and south

a little beyond Thirty-first street. At the time of the accident there was no obstruction to prevent Gilbert seeing the approaching train, had he looked. No other trains were passing the place at the time, but two suburban trains, one north-bound and the other south-bound, had passed a few minutes before. At that point there are some sixteen or more tracks running through the company's yards. The two tracks on the west side are used for the suburban trains, running north and south between the city and the suburbs. The next two tracks are used by through passenger traffic. The next two tracks are used by freight trains. The rest are miscellaneous tracks, used for different purposes—some for storing damaged cars, some for repairing, and so on. Gilbert was struck on track No. 6, which was the out-going freight track, the in-going freight track being No. 5.

On the morning in question all the men in the shops, including deceased, were called by the foreman to come out and push certain wheels across all the tracks over to the machine shop, where they were to be repaired. To push these wheels, which were the ordinary car wheels in pairs,—that is, an axle with a wheel at each end,—required two men to each pair of wheels, and they pushed them from a repair track on the east side of the tracks, across all the tracks, to the machine shop, which is on the west side of the tracks and some distance to the north,— that is, the men, in pushing the wheels across and in going from the repair shop and repair track to the machine shop, proceeded in a north-westerly direction, at an angle across the tracks. The witnesses on both sides testified that the labor of pushing the wheels across was pretty severe. After getting the wheels across the tracks the men returned in a south-easterly direction to the repair shops, where their regular work was. The morning was a very bad morning. As one of the witnesses expressed it: "It was a very bad morning—snowy and very thick, so you could not see very far from you;" or, as again

expressed: "That was a very thick morning—snowy and very thick—foggy. There was no one in front of the engine by the foot-board." As another witness expressed it: "It was storming—it was one of those March blizzards—it came from the north-west." Defendant's fireman testified, that the morning was so bad that the engineer did not have his window open, as was customary. The deceased was returning, as above stated, in a south-easterly direction, towards the repair shops. All the witnesses agree that the storm was so bad that he had his head turned a little sideways. to avoid the storm. Deceased had barely stepped upon track No. 6 when the engine of the approaching train caught him. The whole train, of engine (which was going backwards at the time) and six or seven cars, passed over deceased, and went as far as Twenty-seventh street before they were able to stop it. This is a place where large numbers of men cross back and forth. It was shown that at that hour of the morning a great many suburban trains passed that point north and south. As one witness expressed it: "The suburban trains run every ten or twelve minutes. More engines pass there in the morning. It is hard to tell how many trains pass there. The men usually go to work at seven o'clock. It was between seven and eight when Gilbert was killed—nearly eight." Defendant's foreman testified: "There was a host of trains passing that place during the day  Suburban trains come in every five or six or eight minutes;" that in order to get the wheels across "he had to watch the time and wait for an open track before he could get them up or down;" that he "watched the time to see when he could get the wheels across; that he watched the men as close as he could, and always told them to be careful." There were from one hundred and fifty to two hundred men called out of the shops to roll those wheels across.

The train which struck the deceased was going about seven or eight miles an hour, and was about ten feet north

of Gilbert when he stepped upon the sixth track. The foreman testified: "Gilbert didn't pay any attention when he was going along—that is, when I saw him walking along holding up his hand. He was about five or six feet away before he stepped on the track, and I yelled at him and he sort of pulled his hand up against the side of his head He didn't hear anything, and I yelled then as loud as I could yell. He didn't stop. He stepped right along in front, and the first thing I knew the train went over him. When the train struck him he was on the east side of the bumper—between the bumper and the east corner of the tender—on the east side of the track. He was going diagonally or cat-a-cornering across track No. 6, taking a kind of short cut. He was looking south." He had warned Gilbert on the morning he was injured, and also told the employees to come down from the machine shop along the west side of the tracks, and to cross at the place where he (Crawford) was.

The plaintiff charged, first, "that the railroad company was guilty of common law negligence; that is to say, that under all the circumstances it recklessly and negligently, without warning of any kind, and at a high rate of speed, drove its train through a place where men were working, and over the deceased;" and second, "that it wholly failed to observe the duty imposed by ordinance, viz., in ringing its bell within the city limits."

On the engine, which was backing up, there were the engineer and fireman. On the six or seven cars there were a conductor and two switchmen. No one of these five men saw deceased before he was struck, and no one of them knew that they had struck and killed a man until the train had passed over deceased and reached Twenty-seventh street,—five hundred feet away.

On the trial of the cause the plaintiff introduced in evidence, against the objection of the defendant, section 2462 of the ordinances of the city of Chicago, set forth in his declaration, to-wit: "The bell of each locomotive

engine shall be rung continuously while running within said city, except locomotives running upon the railroad tracks situated east of Indiana avenue, on the shore of Lake Michigan, between Twenty-second street and Park Row, in said city, where no bell shall be rung or whistle blown, except as signals of danger."

To the introduction of this ordinance the defendant objected, first, upon the ground that the city of Chicago had no power or authority to enact the ordinance; second, that if the city of Chicago had such power, the ordinance has no application to relations between employer and employee on the right of way of the company, and not at a public crossing ; and third, that section 2462 was, by implication, repealed by a subsequent ordinance of the city of Chicago entitled "An ordinance fixing the rate of speed at which railroad companies may operate trains within the corporate limits of the city," passed March 26, 1890. In support of the objection counsel for the defendant read to the court an ordinance of the city of Chicago.

The first and fifteenth instructions asked by the defendant were that plaintiff was not entitled to recover, and were refused. The thirteenth was also refused, which was as follows :

"The court instructs the jury, that if the manner in which the defendant conducted its business in the operation of its trains caused the employment in which the deceased was engaged as a servant of the company to be attended by extraordinary and unusual danger to deceased while performing his work and duty as such servant, yet if deceased knew, or by the exercise of his ordinary senses might have known, that the defendant so operated its trains, and thereafter voluntarily continued to expose himself to such extraordinary hazard in performing his duty as a servant of the defendant, and in doing so was killed by a train of the defendant, then the plaintiff is not entitled to recover."

To the refusal to give the first, thirteenth and fifteenth instructions the defendant excepted.

The court gave for plaintiff the following instruction, to which the defendant excepted:

"If you find, from the evidence, that the defendant is guilty of the negligence charged in the plaintiff's declaration, and that the same resulted in the death of Charles F. Gilbert, then the plaintiff is entitled to recover in this action, for the benefit of the next of kin of said deceased, such damages as the jury may deem, from the evidence and proofs, a fair and just compensation for whatever pecuniary damage, if any, the evidence shows said next of kin have sustained by reason of said death, not exceeding $5000."

The verdict of the jury was for the sum of $5000, and upon motion for a new trial plaintiff entered a *remittitur* of $2500, and thereupon the court overruled the motion for a new trial and entered judgment in favor of the plaintiff for the sum of $2500.     The Appellate Court affirmed the judgment, and this appeal is prosecuted.

C. V. Gwin, and James Fentress, for appellant:

If a servant knows the risk of his employment as the business is conducted by the master, and in the course of his employment sustains an injury by reason of such danger, he cannot recover from the master.     *Railway Co.* v. *Donahue,* 75 Ill. 106 ; *Clark* v. *Railroad Co.* 92 id. 43; *Simmons* v. *Railroad Co.* 110 id. 340 ; *Furnace Co.* v. *Abend,* 107 id. 51; *Stafford* v. *Railroad Co.* 114 id. 244; *Kennedy* v. *Railroad Co.* 17 Atl. Rep. 7; *Aerkfetz* v. *Humphreys,* 145 U. S. 418; *Harris* v. *Railway Co.* 40 Mo. App. 255; *Railroad Co.* v. *Duffy,* 4 Am. & Eng. Ry. Cas. 637; Beach on Contributory Neg. (2d ed.) secs. 360-370.

The deceased, by his employment, assumed the risks naturally incident to the changes of the weather; and the fact that it was snowing and stormy, while it may have increased the risks, did not give rise to an extra-

ordinary risk not embraced within the risks assumed by the deceased. *Railway Co.* v. *Hestor*, 21 Am. & Eng. Ry. Cas. 535.

Gilbert will be held, notwithstanding his minority, to have assumed the risks incident to his employment as the business was conducted, to the same extent as if he had been an adult. *Gartland* v. *Railway Co.* 67 Ill. 498; *Pressed Brick Co.* v. *Reinneiger*, 140 id. 334; *De Graff* v. *Railroad Co.* 76 N. Y. 125; *Reardon* v. *Railroad Co.* 51 N. Y. Sup. 134; *Railroad Co.* v. *Adams*, 105 Ind. 151; *Curran* v. *Merchants' Manf. Co.* 130 Mass. 374.

Walker & Eddy, for appellee.

Mr. Justice Phillips delivered the opinion of the court:

The refusal of the first and fifteenth instructions asked by the defendant presents to this court the question as to whether, under the facts in this record, the plaintiff was entitled to recover because of any negligence on the part of the defendant, and whether the intestate exercised due care and caution for his own safety. The number of tracks running parallel with that on which the intestate was killed, the number of trains passing each way at about the time of the injury, and the fact that a great many men were liable to be ordered from the shops to roll wheels from the repair shops to the machine shops, thus necessitating the crossing of all the tracks, and after doing that work returning across those tracks, were facts known to the master. It was a fact also known to the master that engines were being run both forward and backward on various tracks. These known facts rendered the place a hazardous one. The work of rolling the wheels across the tracks was laborious, and the crossing of the tracks with those wheels and returning to the repair shops across those tracks were required from and made necessary on the part of the men called from the

repair shops for that work. With the hazardous charac-
ter of the place where the injury occurred, made so by
reason of the number of tracks, trains and necessary
switching, there was conjoined the fact that work requir-
ing a large number of men—from one hundred and fifty
to two hundred in this instance—to cross the tracks to
and fro, was of frequent occurrence, and this also was
known to the master. The manner of moving trains,
their number, and the number of men crossing back and
forth at that place in the discharge of their duties to the
company, made it the common law duty of the company
to take extra precautions to look out for and warn the
men so crossing. Of all the men employed on the train
none saw or knew of the injury to the intestate until
after his death. All the efforts of Crawford, the foreman
at the shops, and others, by hallooing and otherwise,
failed to attract their attention. None of the train crew
saw or heard their efforts to give notice, and it is appar-
ent there was no look-out from the engine for danger to
persons crossing. There was difficulty in seeing a train
approaching, because the morning was dark, and snow
was falling and a strong wind blowing. Witnesses tes-
tified that they saw the engine two or three car lengths
from where they were as they crossed, and could not tell
whether it was moving or not. Its approach was with
but little noise, and there is conflict in the evidence as to
whether the bell was ringing. With all these circum-
stances shown by the evidence, and this conflict as to
whether the bell was ringing, it was a question for the
jury to determine whether the company used proper pre-
cautions to look out for and warn the men whose duties
required them to cross the tracks under such state of
facts. It does not appear that a look-out was kept from
any part of the engine or train, or on the track.

The intestate, on entering the service, impliedly un-
dertook to observe all proper care for his own safety,
without any warning against the ordinary perils of his

employment, and by his contract of hiring assumed the risk of injury from the ordinary dangers, which would include those known to him or discoverable by the exercise of ordinary care on his part, and if, knowing the hazards of the employment in the manner in which the business was conducted, he voluntarily continued therein, he could not recover because there was a safer mode of conducting that business. The workmen were subject to the orders of the foreman of the shops, who directed the wheels to be taken across the tracks and the men to return to the shops. The foreman testifies that he had to watch the time and wait for an open track before he could get them up or down,— that he watched the time when he could get the wheels across, and watched the men as close as he could, and always told them to be careful. The belief would thus be induced in the minds of the men thus sent across the tracks that they might pass in safety, and it became the duty of the company, in running engines or trains through the yard where so many men were employed, to exercise extra care and caution, where the circumstances rendered the usual method of doing the work more than ordinarily hazardous. Admitting that danger arising from the elements or changes of the weather are a part of the ordinary risks incident to an employment assumed by the employee on entering the service, and that if injury results from such assumed risks without that risk being aided or increased by the negligence of the company or its superintending agencies, the employee could not recover, still the rule is, where negligence is a question of fact, as it most generally is, its solution must depend on the circumstances surrounding at the time of the injury. It was charged that the defendant was guilty of negligence, under the circumstances, in recklessly, negligently and at a high rate of speed running its train through a place where men were working, and over Gilbert. The surrounding circumstances required a commensurate degree of care by employer and employee

alike, and whether that degree of care was used was a question for the jury.

It is urged that the deceased was not in the exercise of proper care and caution for his own safety at the time he went upon the track, or in attempting to cross it, at the place where and time when injured. Under the orders of the foreman, who watched the time for an open track when he could get the wheels across, the deceased discharged his duties. The surroundings were such that others near were unable to tell whether the train was moving at the time they saw it, and its approach was so noiseless that it was not heard by them. Gilbert went directly towards the shops, where he was required to be. Thus, the question whether, under all the surrounding circumstances, the deceased, just prior to being killed, was in the exercise of reasonable care and caution for his own personal safety was proper to be submitted to the jury.

It was not error to refuse the first and fifteenth instructions asked by the defendant.

What has been said herein sufficiently disposes of the error assigned in refusing the thirteenth instruction asked by the defendant. It entirely ignored the fact of circumstances surrounding at the time, affecting the duty of employer and employee alike to exercise care and caution commensurate with attendant danger. The court instructed the jury fully, at the request of the defendant, that plaintiff could not recover unless the deceased was in the exercise of ordinary care at the time of his death, etc., as well as on other questions in the case.

There was asked, and the court gave, but one instruction for the plaintiff, which is copied in the statement herein, and it is urged this instruction has been held erroneous by this court in *Chicago and Northwestern Railway Co.* v. *Dimick*, 96 Ill. 42, and in *North Chicago Rolling Mill Co.* v. *Morrissey*, 111 id. 646. In the *Dimick case* the first and eighth instructions given for the plaintiff are

copied in the opinion, and held to be erroneous. The first was, that the statute required a bell of at least thirty pounds weight, or a steam whistle, to be placed on each locomotive, and to be rung or sounded at the distance of at least eighty rods from the place where the railroad crosses any public street or highway, and to be kept ringing or sounding until such street is reached, etc., and the eighth instruction was similar to that given in this case. In the discussion of those two instructions they are treated as one, and the opinion holds (p. 47): "An instruction almost identical with the above was condemned in *Chicago, Burlington and Quincy Railroad Co.* v. *Harwood*, 80 Ill. 88. It may be said that the defendant's instructions gave the law on this subject accurately to the jury; but that is not enough. Where a case is close in its facts the instructions should all state the law accurately. The jury, not being judges of law, are as likely to follow a bad instruction as a good one." After discussing the ninth instruction it is then further said: "Without entering upon any discussion of the evidence, we are of opinion that the giving of these three instructions was error." On referring to the *Harwood case*, cited in the *Dimick case*, the instruction is found to embrace substantially in one instruction all that is included in the first and eighth instructions in the *Dimick case*. The instruction in the *Harwood case* was held to be error, because it asserted a right of recovery under the circumstances named in it, without containing the requirement of due care on the part of the deceased. It is apparent, on a consideration of the *Dimick case*, that the writer of the opinion in that case used the first and eighth instructions together for determining a settled question, as being the same, when so taken as one instruction, as the instruction in the *Harwood case*, and says of it, "an instruction almost identical with the above was condemned," etc. No discussion of the eighth instruction, separately, is had, and the subsequent reference to the three instruc-

tions, as made in the *Dimick case,* was merely an inadvertent use of the word "three" instead of "two."

In *Rolling Mill Co.* v. *Morrissey, supra,* the instruction purported to be complete in its statement of what would authorize a recovery, and omitted all requirement of due care and caution on the part of the deceased. It further allowed the jury to give such damages as they should deem a fair and just compensation, regardless of proof.

An instruction almost identical with that given in this case was challenged by the appellant in *Chicago, Burlington and Quincy Railroad Co.* v. *Payne,* 59 Ill. 534, and it was held: "The point of this instruction is the measure of damages, and in this respect is entirely correct.' But appellant's counsel insists that it is wrong because it withdraws from the jury all consideration of the conduct of deceased. We do not think the instruction obnoxious to criticism, as claimed. It is not an unusual, nor is it an objectionable, practice, where plaintiff's counsel desire an instruction as to the rule of damages, to say to the jury, that if they find, from the evidence, that the defendant is guilty as charged in the declaration, then the plaintiff is entitled to recover, and to define the measure of damages. Such a mode obviates the necessity of stating, and perhaps reiterating, hypothetically, each element of the cause of action before coming to the real point of the instruction. The declaration here alleges that the death * * * was caused by the wrongful acts, neglect and default of defendant's servants, while he was exercising due care." That case stated that the point in the instruction was as to the measure of damage, and was not referred to in the *Dimick case* nor intended to be qualified by it. So far as that instruction was alluded to in the *Dimick case,* it was, as we have said, to unite the first and eighth as one instruction passed on in the *Harwood case.*

Instructions like the one now under discussion were before this court in *Chicago, Milwaukee and St. Paul Rail-*

*way Co.* v. *Dowd,* 115 Ill. 659, *Pennsylvania Co.* v. *Marshall,* 119 id. 399, and *Chicago, Milwaukee and St. Paul Railway Co.* v. *O'Sullivan,* 143 id. 48, in each of which it was held to relate solely to the measure of damage. An examination of all these cases will show there is no conflict in the opinions of this court as to instructions of the character of the one given in this case for the plaintiff. It relates solely to the measure of damage, and need not incorporate the requirement that plaintiff was in the exercise of due care and caution. It was not error to give it.

Plaintiff offered in evidence an ordinance of the city of Chicago which required a bell on the engine to be rung continuously while running within the limits of the city, certain places excepted, which was allowed in evidence over the objection of the defendant. It was objected to, first, that the city had no power to enact such ordinance; second, if it had the power, the ordinance had no application to the relation of employer and employee on the right of way of the company; and third, it was repealed by a subsequent ordinance.

By the 27th subdivision of section 1, article 5, of the City and Village act, the city council is authorized "to require railroad companies to keep flagmen at railroad crossings of streets, and provide protection against the injury to persons and property in the use of such railroad." The authority to provide protection to persons in the use of such railroad would authorize the enactment of ordinances which would reasonably tend to protect persons from injury by the use made of the road by the company. An ordinance requiring the ringing of a bell on an engine running within the limits of a city would not be an unreasonable requirement, and a compliance therewith would tend to give notice of the approach of an engine on the track, and notice of its approach would tend to the protection of persons on or crossing such track. The first ground of the objection was not well taken.

The, city having the right to adopt the ordinance, whoever would be benefited by a compliance therewith on the part of the company would be entitled to the protection that obedience to the law would furnish, whether an employee or not. The second ground of objection was not well taken.

The third ground of objection was, that the ordinance had been repealed by a later ordinance. The defendant offered in evidence for the court an ordinance which was urged to be a repeal, by implication, of that offered by plaintiff. From a careful examination of the ordinance offered by defendant we hold it does not effect a repeal of that offered in evidence by the plaintiff. It was not error to overrule the objection.

We find no error in the record, and the judgment is affirmed.                          *Judgment affirmed.*

