85 273
d206s²277

## Joy Morton and Mark Morton v. Patrick O'Connor.

1. INSTRUCTIONS—*Where the Case is Close.*—Where a case is close in its facts the instructions should state the law accurately. The jury, not being judges of the law, in civil cases, are as likely to follow a bad instruction as a good one.

2. SAME—*Invading the Province of the Jury.*—An instruction in a personal injury case, stating that in judging of the preponderance of the evidence the jury should be governed by the quality of the evidence, and not simply by the quantity, and, in judging of the weight to be given to the evidence of the witnesses, they may take into consideration the feeling and bias of any of the witnesses, their manner on the witness stand, their prejudice, if any, in the opinion of the jury, has been manifested either in favor of one party or the other, and in making up their verdict, take into consideration all the facts and circumstances of the case, as detailed before them in the evidence, is confusing and misleading, in a case where clearness and accuracy are demanded, and is erroneous, as invading the province of the jury.

3. WITNESSES — *Credibility of Employes.*— An employe, or party unimpeached, is as credible a witness in the eye of the law as any other, until the contrary appears.

Action in Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1898. Reversed and remanded. Opinion filed October 27, 1899.

FRY & HYDE, attorneys for appellants; WILLIAM BURRY, of counsel.

FRANCIS T. MURPHY, attorney for appellee; ROY O. WEST, of counsel.

MR. JUSTICE SHEPARD delivered the opinion of the court. The appellee was a teamster employed by one Bern-

heimer to haul salt from appellants' warehouse. The warehouse was about 350 feet long, and had fourteen doors or openings through which teams entered to load and pass out of when loaded. The particular doorway in question was about nine feet wide and a little over eleven feet high. A railroad track, of standard gauge, ran along the roadway in front of the warehouse, the inside of the inner rail of which was three and one-half feet from the warehouse. To enable teams to cross the track and enter the warehouse, a plank gangway, which, when lying down, would cover the tracks, was used. That gangway was made of three-inch plank on stringers.

In superficial dimensions it was eight by ten feet, and it weighed about one thousand pounds. When not in use the gangway was sometimes stood up against and across one of the openings into the warehouse, the lower edge resting upon the ground or other planks in the space between the inside track and the building. When so stood up, it had no fastening or force to keep it in position except gravity, and the side of the warehouse against which it stood or leaned.

On the day of the accident appellee was on the premises for the first time. He hauled away one load in the forenoon and returned for another in the afternoon. Some railway cars had, in the meantime, come in upon the tracks, and the gangway had been raised up and stood across the doorway to permit them to pass. Being uncertain of the doorway where he got his first load, he alighted from his wagon and went across the tracks to the place where he saw the gangway standing up, and, as he testified, while he was looking, or "peeking" through a crack in the gangway planks, about three feet above the ground, to see if that was the proper place for him to load, the gangway fell forward upon him, inflicting the injuries to recover for which he brought this suit. He testified he had never before seen the gangway standing up. No person saw him at the moment the gangway fell upon him, and his case, so far as his intervention in the act of its falling is concerned, depends wholly upon his own testimony.

A witness for the defendants testified that, as he drove past the particular doorway, he saw the appellee hanging on the upper edge of the gangway with his arm over it and his chin about even with its top.   After so seeing the appellee, the witness drove along about four or five rods, his team walking, and just as he stopped he heard the crash of the falling gangway.   He estimated it was not over a minute and a half or two, after observing appellee in the position described, that he heard the gangway fall. Appellee testified that the gangway appeared to stand nearly perpendicularly against the building.

Opposed to him in that respect were three witnesses, including two of the six or eight men who raised and stood it against the building, who testified the gangway stood on a slant, with the bottom from ten inches to two feet further out from the building than the top, and it was further testified that from six to ten men were required to handle the gangway in raising or lowering it.

There was also a sharp conflict in the testimony of the witnesses called by both sides of what admissions, if any, were made by appellee immediately after the injury, concerning his attempt to lower the gangway unaided, and its consequent falling upon him.

It will be thus seen that the question of whether, at the time of his injury, appellee was guilty of contributory negligence, was of controlling importance at the trial, and was a very close one, and required to be submitted to the jury without substantial error.

" Where a case is close in its facts the instructions should all state the law accurately.   The jury, not being judges of law, are as likely to follow a bad instruction as a good one."   I. C. R. R. Co. v. Gilbert, 157 Ill. 354.

Appellants, by certain instructions tendered by them, sought to have the court tell the jury that the doing of certain things by the appellee constituted negligence on his part, and precluded a recovery by him.   Instructions of such character are never good, unless the act specified amounts to negligence *per se.*   It is only in rare cases that the law

intervenes and says that the doing of such and such things are, in themselves, negligent acts which will prevent a recovery. Negligence is usually a question of fact for the jury, and so, under the circumstances of this case, if appellee did the things specified in the instructions, it was for the jury, and not for the court, to say whether, in so doing, he was guilty of a want of ordinary care and caution for his own safety, and there was no error by the court in modifying such instructions.

The modification of appellant's eighth instruction is complained of, but it was made no worse by the modification than it was before. It was clearly bad before modification, in that it stated that the use of force by appellee to the gangway, for the purpose of lowering it, would, as a matter of law, defeat his right to recover. Whether so or not was for the jury.

We see no occasion for comment upon the other instructions offered by appellants, and either modified or entirely refused, further than to say we perceive no substantial error in regard to the action of the court in respect of them.

Coming, however, to the instructions given at the instance of the appellee, we are forced to regard that reversible error was committed in respect thereof.

The first instruction given at the instance of appellee is as follows:

"(1) You are instructed that, in judging of the preponderance of the evidence, you should be governed by the quality of the evidence and not simply by the quantity, and, in judging of the weight to be given to the evidence of the witnesses, you may take into consideration the feeling and bias of any witness or witnesses, their manner on the witness stand, their prejudice, if any, in the opinion of the jury, has been manifested either in favor of one party or the other, and in making up your verdict, you should take into consideration all the facts and circumstances of the case as detailed before you in the evidence."

The first proposition announced by the instruction is that the jury should be governed by the quality of evidence, and not simply by the quantity. We do not know what is meant by "quality" in the connection here employed, and

it is not likely that the jury did.    At the best, the instruction was in such respect confusing and misleading, and that, too, in a case where clearness and accuracy were demanded. If it be meant that the jury should be controlled by the testimony of the most intelligent, best informed, most credible and least interested witnesses, it was error for the court to invade the province of the jury in thus pointing out to them a class of witnesses whose testimony should be given the greater weight.    Chicago City Railway Co. v. Keenan, 85 Ill. App., *post.*

We need not speculate as to what other meaning "quality" has, as used, for whatever it may mean, the instruction was in effect to single out by the court a class of witnesses whose testimony the jury should attach a controlling weight to.    The jury alone shall determine where the weight of evidence is to be found.

But the instruction is yet more vicious by its assumption that "feeling and bias" existed in some witness or witnesses. There was no direct proof that any witness who testified was actuated by feeling or bias, but it does appear that one of the appellants was a witness, and that many if not most of appellants' witnesses were their employes, and the effect of the instruction was liable to be understood by the jury as a singling out of them as subjects of bias and feeling, there being no others on the side of appellants to whom the instruction could possibly apply.    An employe or party unimpeached is as credible a witness in the eye of the law as any other, until the contrary appears.    West Chicago Street R. R. Co. v. Raftery, 85 Ill. App. 319.

The attempted justification of the instruction that "feeling and bias" are controlled by the words "if any" following "prejudice," can not prevail.    As used here, the limiting words apply only to their last antecedent, "prejudice."    To carry them back would cause them to relate to the manner of witnesses upon the stand, which would be absurd and meaningless.

It is argued that appellee's third instruction is bad because of, as said, there being no evidence in the record of

the liability of appellee to suffer in the future as a result of the injury.

Appellee lost his leg, and there was evidence tending to show that he had "not been able to do any work since."

We regard such evidence touching his inability to work for a space of about two years preceding the trial as affording a fair inference that such inability was, and was likely to continue, to be attended in some degree with suffering.

It is urged that error was committed in permitting a witness to testify, over appellants' objection, that there were no fastenings used to hold the gangway in position when stood upright. The negligence charged in the second count of the declaration is stated to consist in "placing, keeping, upholding and managing" the gangway "upon and against the door, opening or entrance to said warehouse."

The absence of fastenings was a proper subject of proof to sustain such count.

The refusal to permit a witness to testify that the gangway was in such a position, just before the accident, that it would not fall without the use of force, was proper. An answer to the question would have brought out only an opinion by the witness. Full latitude was given to show how the gangway was placed, and it was for the jury, and not the witness, to draw all proper conclusions.

We do not observe any other questions of law that require comment.

For the error in respect of appellee's first instruction, the judgment will be reversed and the cause remanded for another trial. Reversed and remanded.