## Illinois Central Railroad Co. v. William Walter Kief, Admr.

1. INSTRUCTION—*when an, upon the question of the exercise of ordinary care is erroneous.* An instruction upon this subject which restricts the inquiry to " the instant " when the accident occurred, is erroneous, and this error is not cured by other instructions stating the rule correctly.

2. INSTINCT OF SELF-PRESERVATION—*when presumption of, does not apply.* Where eye-witnesses have testified to the facts and circumstances surrounding the accident which caused the death of the plaintiff's intestate, the rule which entitles the jury to consider the instinct of self-preservation and the presumption which may arise from proof of the habitual exercise of due care, does not apply. (C., C., C. & St. L. R. R. Co. v. Keenan, 190 Ill. 217, explained.)

3. ORDINANCE—*proof of, when insufficient.* The certificate of the clerk of a village to a purported ordinance is insufficient to authorize its admission, unless such certificate shows the fact that such ordinance was published or posted as required by law and the date of such publication or posting, and, also, that such facts are certified to upon the basis of the records and files of the office of such clerk.

4. VARIANCE—*when, is immaterial.* Notwithstanding a variance as to the place of an accident appears and the point has been properly and duly raised, yet such variance is immaterial where the defendant is not misled thereby and the exact place of the accident is not a material issue in the case.

Action on the case alleging death for wrongful act. Appeal from the Circuit Court of Ford County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the May term, 1903. Reversed and remanded. Opinion filed December 9; 1903.

JOHN G. DRENNAN and CLOUD & MOFFETT, for appellant.

SCHNEIDER & SCHNEIDER and F. M. THOMPSON, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case, brought by appellee, as administrator of the estate of Phillip Kief, deceased, against appellant, for wrongfully causing the death of appellee's intestate, at a public street crossing in the village of Melvin in Ford County, by one of appellant's trains, on February 22, 1902. The plaintiff recovered judgment for the sum of $2,000, from which the defendant appeals.

The declaration contained five counts. The first count charged general negligence in running the train. The second count charged the running of the train at a high rate of speed, contrary to the village ordinance. The third count charged the failure to give the statutory signals when approaching the street crossing at which deceased was struck and killed. The fourth and fifth counts aver that a public crossing was formed by the intersection of Main and Crossley streets and the railroad track at the place where deceased was struck and killed; that there was a grove or park and depot which obstructed the view of persons walking on the sidewalk on the north side of Main street; that many persons were in the habit of crossing the track, especially at the hour of the happening of the collision; that defendant knew all these facts, and recklessly, wilfully, wantonly and intentionally ran its train up to and upon the crossing formed by the two streets and the track, at, to wit, fifty miles an hour, in violation of the ordinance, and that it well knew that the running of the train, at, to wit, fifty miles an hour, was a dangerous speed, and that by reason of the running of the train at that speed, deceased was struck and killed at the crossing formed by the streets and track. The fifth count also charges a failure to give the statutory signals. The first three counts aver the exercise of due care by the deceased.

The record discloses the following facts: ' Phillip Kief, appellee's intestate, was a tenant farmer, fifty-eight years old, and partially deaf. He left surviving him a widow and children. During the three years previous to his death he had resided on a farm four miles northeast of Melvin, within a mile of defendant's line of road which ran through Melvin, and in plain view of the trains which passed over that road. It had been his custom to visit that village upon business, two or three times a month for two and a half years prior to his death. In going to and from his home on these visits, he had to cross appellant's railroad at a point near Melvin. He occasionally visited a friend who lived on the opposite side of the railroad track from where he entered the village. He and his wife visited this friend on the day in question, and he was returning to the business side of town from his friend's house at the time he met his death.

Melvin had a population of less than six hundred people; four-fifths of whom lived on the west side of the railroad track. Appellant's railroad passed through the village from northeast to southwest, crossing Main street immediately south of the depot, and the track was straight. The sidewalk at the point where it crosses the track where deceased was struck, is twenty-seven feet east from the east line of Crossley street, and forty-one feet northeast of the east line of Crossley street, where it is intersected by the railroad track. Main street is the business street of the village, the business portion being west of the track and Crossley street.

The train which caused his death was due to pass Melvin at 1:30 P. M. It was a south-bound limited passenger train of five cars, known as the "Daylight Special." It was not scheduled to stop at Melvin, and its usual speed through Melvin was twenty-five to thirty miles per hour. It came into Melvin at about its usual speed on the day in question, and was running from twenty-one to twenty-five miles an hour when it struck deceased.

Immediately north of Main street and adjoining the rail-

road right of way on the southwest, is a small triangular park, the trees in which stand about a rod apart, and were trimmed up twelve or fourteen feet from the ground. These trees and the depot constituted the only obstruction to the view, looking along the track to the northeast, of a person walking along the sidewalk south of the park, on the north side of Main street.

The day in question was bright and clear, and there was no wind. The deceased left the house of his friend a few minutes before the train was due to pass, to go up town. When he was first observed approaching the track, he was walking westward on the walk on the north side of Main street, about ten or twelve feet from the track. He was walking slowly, with his head down and his hands in his pockets. When he had nearly crossed the track and the train was about to strike him, he heard it, turned his head slightly and made an effort to jump out of its way. The deceased had succeeded in crossing the track and was on the right side thereof, when he was struck by the pilot beam of the locomotive. His body was carried for some distance and then dropped, alighting about twelve feet from the track.

At the request of appellant, the court submitted two special interrogatories to the jury, the first of which asked whether or not the deceased was in the exercise of due care and caution, to which the jury answered, "Yes;" and the second, as to whether or not the train was being run recklessly, wilfully or wantonly, to which the jury answered, "Recklessly."

First. In each of the first three counts of the declaration it is averred that appellee's decedent was in the exercise of due care for his own safety. · The evidence adduced by appellant tended to prove that as the deceased approached the track and when he crossed the same he was walking along slowly, with his head down; that had he looked he would have had a clear view of the track in the direction from which the train was approaching, for several hundred feet; that the usual crossing signals were given by ringing the

bell and sounding the whistle of the locomotive, before he stepped upon the track; that he walked leisurely on, looking neither to the right nor left, until he was within a foot of the west rail of the track, when he glanced in the direction of the approaching train and made an effort to jump, but was immediately struck by the pilot beam and killed.

The weather was clear and no wind was blowing. There were no other trains in the vicinity, and there were no circumstances or conditions existing to distract the attention of deceased from the train if he had seen or heard it, nor to excuse his failure to look and listen. In this state of the record the court gave to the jury, at the request of appellee, the following instruction:

"4. The jury are instructed, that the plaintiff is not required to produce direct and positive testimony showing just what the deceased was doing *at the instant he received the injury causing his death;* that the law requires only the highest proof of which the particular case is susceptible; and you may take into consideration, with other facts, the instinct and presumptions which naturally lead men to avoid injury and preserve their own lives."

By this instruction the jury was told that the plaintiff was not required to produce direct and positive testimony showing what deceased was doing *at the instant* he received the injury. From this the jury might well understand that the material question was not, did deceased exercise due care when he went upon the track, but was he exercising due care when, at the instant he was struck, he made an effort to escape?

"One, who, failing to observe due care, blindly walks into danger that the observance of due care would have enabled him to avoid, is no less guilty of contributory negligence than he who, by the observance of due care, could extricate himself from danger, but fails to make any effort for his personal safety, and because thereof is injured." C., M. & St. P. R. R. Co. v. Halsey, 133 Ill. 248; Abend v. T. H. & I. R. R. Co., 111 Ill. 203; I. C. R. R. Co. v. Farrell, 86 Ill. App. 436; C. & A. R. R. Co. v. Cossar, 203 Ill. 608.

Whether or not the deceased used ordinary care to avoid the collision, is shown by the evidence to have been a vital

question, and one sharply contested upon the trial; and the instructions upon that point should, therefore, have been clear and certain. Inasmuch as the one under discussion was uncertain and calculated to mislead the jury, the giving of the same was prejudicial error.

In L. S. & M. S. Ry. Co. v. Hessions, 150 Ill. 546, the court said:

" In cases of this kind, where the party injured has been struck by a moving train while upon or attempting to cross railway tracks, it has been repeatedly held to be error to limit the requirement that he should be in the exercise of ordinary care, to the exact time of the injury." C. & A. R. R. Co. v. Cossar, *supra*.

In C., C., C. & St. L. Ry. Co. v. Keenan, 190 Ill. 217, cited by appellee, the court held that the phrase, " at the time in question," as used in the instruction then under consideration, referred to the conduct of the deceased while approaching the railroad, as well as while attempting to cross the same. While the authority cited is an answer to appellant's criticism of plaintiff's ninth given instruction, we cannot see how the words " at the instant he received the injury " can be so amplified as to cover any other time or period.

Appellee contends, however, that the defect was cured by the third and fifth instructions given on behalf of appellant, which required the jury to find that the deceased was exercising due care both before and at the time of the accident, both while he was on the track and before he went upon it. Notwithstanding these instructions correctly announced the rule, we can not say that the error was not prejudicial.

" Where a case is close in its facts, the instructions should all state the law accurately. The jury, not being judges of law, are as likely to follow a bad instruction as a good one." C. & N. Ry. Co. v. Dimick, 96 Ill. 42, 47; I. C. R. R. Co. v. Gilbert, 157 Ill. 354; Perkins v. Knisely, 204 Ill. 275.

Appellant further insists that the instruction was erroneous for the reason that by it the jury were given to understand that the testimony of eye-witnesses was not the

highest proof of which the case was susceptible, and that they might turn from that class of evidence to the natural instincts which lead men to avoid injury, and decide the case upon the presumptions which arise therefrom; that inasmuch as there was full proof of all the material facts and circumstances leading up to and attending the death of Kief, the jury should not have been told to "take into consideration the instincts and presumptions which naturally lead men to avoid injury and preserve their own lives."

It has been held by the Supreme Court in a number of cases that in actions of this character where there are no eye-witnesses to the accident, due care on the part of the deceased need not be established by direct evidence, but may be inferred from all the circumstances shown to have existed immediately prior to and at the time of the injury, and in determining such questions the jury may consider the instincts prompting to the preservation of life and avoidance of danger. I. C. R. R. Co. v. Nowick, 148–29; B. & O. S. W. R. R. Co. v. Then, 159–535; C., B. & Q. R. R. Co. v. Gunderson, 174–495; Dallemand v. Saalfeldt, 175–310.

An examination of the opinions in the foregoing cases will disclose the fact that in neither of them were there eye-witnesses to the accident.

In the recent case of C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492, the court says:

"It is true that where the fact is not susceptible of direct proof it may be inferred from the circumstances, and the plaintiff may be aided by the presumption that a person does not voluntarily incur danger or the risk of death. But that does not affect the question where the burden of proof rests. In a case where a person is killed and there are no eye-witnesses to the accident, there is no dispute that the burden of proof rests on the plaintiff to show due care on the part of the deceased, but if there are no eye-witnesses and no direct proof, he is entitled to the benefit of the presumption."

Appellee insists that he is entitled to the benefit of such presumption, notwithstanding there were eye-witnesses to the accident, and cites in support of his contention the case of C., C., C. & St. L. Ry. Co. v. Keenan, 190 Ill. 217.

While that case seems to hold generally that, in cases of this character, the plaintiff is entitled to the presumption, omitting the qualification as to the absence of eye-witnesses to the accident, the facts recited in the opinion fail to disclose whether or not there were eye-witnesses to the accident involved in the case. We may, therefore, properly assume that there were none. If there were eye-witnesses, it would follow that the court intended to radically depart from its former views and those subsequently expressed in the Heerey case, *supra*.

We are therefore of opinion that the presumption does not exist where there are, as in the case at bar, eye-witnesses to the accident.

Second. On the trial the plaintiff offered in evidence a copy of a purported ordinance of the village of Melvin which prohibited railroads from running, or permitting to be run, locomotives or cars at a greater rate of speed than ten miles per hour, unless said railroads should place a guard at each street crossing, under a penalty of not less than $25, nor more than $200. The certificate accompanying said copy was in the words and figures following:

" STATE OF ILLINOIS, ⎫
   County of Ford,     ⎬ ss.
Village of Melvin.    ⎭

I, George T. Iehl, Clerk of the Village of Melvin, in said county, and keeper of the papers, records and ordinances of said village, do hereby certify that the ordinance of which the foregoing is a correct copy was duly passed by the President and Board of Trustees of said village on the 8th day of August, 1890, and approved by the President of said Board of Trustees on said August 8, 1890. That on said date there was no newspaper printed or published in said Melvin, and that as appears from the affidavit of H. H. Moore, who was then the clerk of said village, he did on August 19, 1890, post three true copies of said ordinance in as many public places in said village. Geo. T. Iehl, Village Clerk. (SEAL.)"

The defendant objected to the admission of the ordinance on the ground that the certificate attached to the copy thereof was insufficient. The objection was overruled by

the court, and the ordinance was read to the jury. Its admission in evidence is urged by appellant as error.

Unless the passage and publication of the ordinance were such as to meet the substantial requirements of the statute, its admission in evidence was clearly error. Section 65 of Chapter 24 of the Statutes, 1 Starr & Curtis' Ann. Stat., 2nd ed. 717, provides that all ordinances imposing fines * * * shall be published in a newspaper published in the village, * * * or if no newspaper is published therein, by posting copies * * * in three public places; and section 66 provides that ordinances and the date of publication thereof may be proved by the certificate of the clerk.

The clerk certifies to the posting, not from anything appearing to him from his records, but from what appears to him from an affidavit which does not appear to be a part of the files of his office, and the date of which does not appear. From all that can be gathered from this certificate of the clerk, we may presume that when he came to make the certificate, he found no date of record from which he could make it, and called upon the former clerk for proof of the posting; and that such proof was furnished in the form of an affidavit of the fact. The affidavit was not produced so that the court might satisfy itself of its sufficiency, if such proof could, in any event, be accepted. The certificate is a mere statement of the clerk based upon *ex parte* evidence not of record. This is not sufficient. If the fact that the ordinance had been duly published or posted as required by law, had appeared from the records and files of his office, we think that a general statement to that effect, specifying the dates of said publication or posting, would have been *prima facie* sufficient proof thereof; but in the absence of record evidence of the posting, from which the clerk could make his certificate, and in the light of this certificate we must so presume, plaintiff should have been prepared with competent common-law proof of the required facts. This proof he did not produce, and the ordinance was improperly admitted in evidence.

Third. Appellant contends that the fourth and fifth counts of the declaration both aver that the deceased was struck and killed at a public crossing formed by the intersection of Main and Crossley streets and the railroad track; that the evidence locates the place where he was struck at the sidewalk on the north side of Main street at the point where it is intersected by the track, which is twenty-seven feet from the nearest line of Crossley street and forty-one feet from the point where the two streets are intersected by the railroad track; that there was, therefore, a material variance between the allegations and the proof. The objection was properly raised on the trial by a motion to exclude the evidence so far as it related to said counts, and, if well taken, the overruling of the motion was error.

The counts aver that while the deceased "was walking from the east westward on Main street and approaching said crossing along the south side of the grove and the depot, and from thence onto and attempting to cross said crossing" he was then and there killed, etc., which fixed the place of the accident with sufficient certainty. Appellant could not have been misled by the variance.

It is admitted that the appellee was struck at the crossing of Main street and the tracks, and the facts that the counts place the locus of the accident at a point twenty-seven feet distant therefrom, is of no importance in this case, for the reason that the material and important inquiry is as to whether the accident occurred at a public crossing. The counts aver that it did, and such averments are sustained by the evidence.

In L. S. & M. S. Ry. Co. v. Ward, 135 Ill. 511, cited by counsel for appellant, the exact place of the accident was important, as upon it turned the question as to whether or not it occurred upon a public crossing or upon the right of way of the railroad, in which latter event the plaintiff would have been held to be a trespasser. No such question is involved in the case at bar.

If a tort is averred and the substance of the allegation is proved, a variance is not material if the opposite party has not been misled. C. & G. T. Ry. Co. v. Spurney, 197 Ill. 471.

Fourth. A number of other errors are assigned which can, and doubtless will, be avoided or corrected upon a re-trial. As it will be necessary to submit the cause to another jury we will refrain from any further discussion of them, or of the facts.

For the errors referred to, the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*