## Arthur A. Weber, Administrator, Appellee, v. Chicago, Burlington & Quincy Railway Company et al., Appellants.

1. Trial—*when conduct of counsel ground for reversal. Held*, that the following conduct of counsel is ground for reversal: In the preliminary cross-examination of a witness the following occurred: "Q. Are you now perfectly cool?" to which question the witness answered, "I am, yes, sir." Thereupon the following assertion was made: "I see your hands and feet jerking all the time, I thought perhaps you were a little nervous," it appearing that no such conduct on the part of the witness was apparent to the court and that the effort upon the part of examining counsel was to produce the impression that the witness had shown indications of fear, and the effect of such conduct was not remedied by the sustaining of an objection and a reprimand.

2. Trial—*when arguments of counsel ground for reversal.* In a close case, an effort to read from a decision of the Supreme Court and a criticism of the Supreme Court's rulings, constitute ground for a new trial.

3. Instructions—*when as to instinct of self-preservation erroneous.* In an action for death caused by wrongful act, it is erroneous to permit the jury to consider the instinct of self-preservation where there was an eye-witness of the accident which resulted in the death.

4. Instructions—*when, as to exercise of ordinary care, erroneous. Held*, that the following instruction was erroneous in that it limited too closely the time within which the deceased must have been in the exercise of ordinary care for his own safety:

"The court further instructs the jury that in order for the plaintiff to recover in this case, it is necessary for him to prove by a preponderance of the evidence that the following allegations in the declaration are true, to-wit:. 1st. That the plaintiff's intestate, Frederick Weber, was killed at the time and place alleged in the declaration, and that he left him surviving a widow and next of kin as charged. 2nd. That the defendants were guilty of the negligence mentioned in the declaration or some one or more counts thereof in the manner charged in the declaration and that in consequence and by reason thereof the said Frederick Weber was killed. 3rd. That at the time of his death the said Frederick Weber was in the exercise of ordinary care for his own personal safety; and the other instructions of the court must be considered and construed by the jury in connection with this instruction; and if the jury believe from the evidence that the statements herein recited are true, a verdict should be rendered in favor of the plaintiff."

5. Instructions—*approved form as to rule to look and listen.*

The following instruction as to the rule to look and listen is approved:

"If the jury believe from the evidence that under all the facts and circumstances surrounding said Frederick Weber, shown by the evidence when he was driving along the said highway, mentioned by the witnesses approaching and in near proximity to the crossing of said highway and said railroad, ordinary care and caution required that he should stop and look and listen to ascertain whether any locomotive engine or train was approaching said crossing on said railroad within such distance as to make it dangerous or unsafe to drive upon the said railroad at such crossing, then it was the duty of the said Frederick Weber to stop, look and listen before driving upon the said railroad at said crossing; and if the jury believe from the evidence that the said Frederick Weber neglected or failed to do so, and that if he had so stopped, looked and listened, he would have discovered or ascertained the approach of said locomotive engine and train in time sufficient to have avoided the injury, then the plaintiff cannot recover in this case."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Adams county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1907. Reversed and remanded. Opinion filed April 21, 1908.

JOSEPH N. CARTER and MATTHEW F. CARROTT, for appellant; CHESTER M. DAWES, of counsel.

VANDEVENTER & WOODS, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellee as administrator of the estate of Frederick Weber, deceased, against appellants, Chicago, Burlington & Quincy Railway Co. and Chicago, Burlington & Quincy Railroad Co., lessee and lessor, respectively, of a line of railroad, for wrongfully causing the death of his intestate. A trial by jury resulted in a verdict against appellants for $6,500, from which verdict appellee was required to remit $2,500, and judgment was entered against appellants for $4,000.

The declaration contains six original and six additional counts, the first three of which original counts charge in substance that appellants were possessed of and operating a railroad and running theron a certain

locomotive engine and train of cars, which engine and cars they were driving upon said railroad toward Quincy over and across a public highway running east and west; that while the deceased was riding in a vehicle drawn by horses on said highway across said railroad, using ordinary care for his own safety, appellants so negligently and carelessly operated their said engine and cars that the same struck the vehicle in which said deceased was riding with great force and violence, and that he was thereby killed. The fourth original count charges that the said public crossing of the highway by the railroad was at grade, and that by reason of the nature of the ground, and of certain trees, buildings, fences, weeds and crops standing and growing upon the land immediately east of such crossing and north of the public highway, it became extremely difficult for a person approaching the crossing from the east on the highway to see or hear a locomotive and train approaching the crossing from that direction; and that it was the duty of appellants to have placed and kept a watchman or some other safeguard at said crossing to give warning to travelers on the highway, of the approach of locomotives, or to have required trains approaching said crossing from the east to run at a low rate of speed; that appellants did not perform or regard such duty but negligently permitted trains approaching said crossing to run at a high rate of speed, and did not provide any other safeguard to render said crossing reasonably safe.

The fifth and sixth original counts charge that appellants drove their locomotive engine upon and over said crossing without observing the provisions of the statute requiring the sounding of a steam whistle or the ringing of a bell continuously for a distance of at least eighty rods before said crossing was reached. The six additional counts are substantially like the six original counts, except that each additional count charges that the Chicago, Burlington & Quincy Railroad Co. was the owner of said railroad, and that the Chicago, Burling-

ton & Quincy Railway Co. was operating said railroad as lessee.

It was stipulated upon the trial that the Chicago, Burlington & Quincy Railroad Co. leased its railroad to the Chicago, Burlington & Quincy Railway Co., on November 20, 1901, and that at the time the deceased was killed the latter company was operating the railroad.

The evidence tends to show that on July 16, 1903, at about 1:30 o'clock in the afternoon, the deceased was riding along in a spring wagon drawn by two horses, going westward on a public highway toward the city of Quincy, at a point about a mile east of the corporate limit of said city where said public highway was crossed at grade by the railroad track of appellants; that while the deceased was attempting to cross said railroad track on said highway, he was struck and instantly killed by a locomotive engine and passenger train running at the rate of about forty miles an hour southwesterly toward the city of Quincy; that for some distance before reaching the crossing a view of the railroad track and of the trains thereon to the northeast was somewhat obscured from the vision of a person traveling west on said highway toward said crossing by an embankment from six to ten feet in height on the north side of the highway, upon which embankment there was a board fence, and by fruit trees, growing corn, weeds and grass. The evidence is in sharp conflict upon the question as to whether or not the required statutory crossing signals were given by those in charge of the locomotive engine. The only eye witness of the accident which resulted in the death of appellee's intestate was Louis Cain, the locomotive fireman, who testifies in substance that he was looking out of the engine cab on the left hand side coming toward Quincy; that the highway crossing signal, consisting of two long and two short blasts of the whistle, was given just before the whistling post was reached; that the bell upon the locomotive which was rung

automatically by compressed air was started in motion at Fowler, a station eleven miles northeast of Quincy, was ringing continuously until the crossing was reached; that when he first saw the deceased upon the highway the latter was twenty or thirty feet from the crossing, riding in a spring wagon drawn by two horses; that the lines were hanging slack and that the deceased was looking down—appeared to be looking at something in his hand. He further testifies that as soon as he saw the deceased approaching the crossing he called the attention of the engineer to the fact and the latter immediately applied the air brakes and sounded the danger or alarm whistle; that the horses then stopped of their own accord; that he then saw the deceased grab up the lines and slap the horses, and reach for a whip in the back of the vehicle; that the deceased then stood up and started to whip the horses and drove them upon the crossing, and at a point half way between the crossing and the whistling post there was nothing to obstruct his view of a vehicle in the road twenty-five, fifty or 100 feet east from the crossing and that from his position in the cab at the whistling post eighty rods from the crossing there was nothing to obstruct his view of a person driving on the highway at a point 200 feet east of the crossing; that after striking the deceased the train, consisting of the locomotive and three cars, ran about two train lengths, when it returned to the scene of the accident.

In the preliminary cross-examination of the witness Cain by one of the counsel for appellee, the witness was asked: ''Are you now perfectly cool?'' to which question the witness answered: ''I am, yes, sir.'' Counsel for appellee then said to the witness: ''I see your hands and feet jerking all the time, I thought perhaps you were a little nervous.'' To this remark of counsel for appellee, counsel for appellants objected and the trial court suspended the further cross-examination of the witness, sharply reprimanded counsel for appellee, dismissed the jury from the box, and ordered a

short recess to be taken. Counsel for appellants then moved the court to withdraw the case from the jury and for a continuance of the cause, because of the conduct of counsel for appellee and his remark to the witness, but the court overruled the motion and thereafter the further cross-examination of the witness proceeded.

It is manifest from what appears in the record, including the remarks of the court, that the statement of appellee's counsel characterizing the conduct and actions of the witness was wholly unwarranted by the facts. While the trial judge did all in his power to protect the witness from the unjustifiable imputation put upon him by counsel for appellee, we are of opinion that the prejudicial effect of the statement was not thereby wholly removed. The jury were undoubtedly led to believe by the statement of counsel for appellee that he had seen something in the conduct and actions of the witness which was unobserved by them or by the trial court, and this is the impression counsel for appellee doubtless intended to give to the jury.

During his closing argument to the jury one of the counsel for appellee spoke as follows: "Now I intend to say something here and you (turning to counsel for appellants) may object if you want to. I dare you to allow me to read that case to the jury." (Referring to a law book lying upon the table.) "The railroads forced the Supreme Court to change the law for the benefit of the railroad. Thomas v. Thompson was killed." (Referring to another case in the Supreme Court.) "The case was tried, damages were returned and the Supreme Court affirmed it. Fifty years ago a man was killed under like circumstances to this case; many men, many women, many children, many horses have been killed. For fifty years the railroads in Illinois have been stained red with human blood."

In a case as close upon the facts as is the case at bar, the unprofessional, unfair and wholly unwarranted reference by counsel for appellee to the adjudi-

cations of the court of last resort in this State, and his reflections upon that court, the challenge to appellants' counsel to permit counsel for appellee to read to the jury a decision of the Supreme Court, which counsel for appellee well knew it was improper to do, and the grossly intemperate appeals to the passion and prejudice of the jury by counsel for appellee, shown by the foregoing abstract from the record, constitute error which neither the objections thereto by counsel for appellants, nor the rulings of the trial court sustaining such objections, operated to render harmless. Wabash Ry. Co. v. Billings, 212 Ill. 37; C. U. Trac. Co. v. Lauth, 216 Ill. 176; Ill. Cent. R. R. Co. v. Seitz, 111 Ill. App. 242; Chicago & Alton Ry. Co. v. Scott, 232 Ill. 419.

By the eighth instruction given at the instance of appellee the jury were informed, among other things, that in determining the character of the conduct of the deceased, at the time of his injury and death, they might take into consideration the natural desire or impulse of rational human beings to avoid danger or death.

In view of the fact that the witness Cain was an eye witness of the conduct of the deceased as he approached and drove upon the crossing in question, we think the portion of the instruction referred to should not have been given to the jury as an element proper to be considered by them in determining the question of due care or want of due care on the part of the deceased.

In I. C. R. R. Co. v. Kief, 111 Ill. App. 354, this court said: "Where eye-witnesses have testified to the facts and circumstances surrounding the accident which caused the death of the plaintiff's intestate, the rule which entitles the jury to consider the instinct of self preservation and the presumption which may arise from proof of the habitual exercise of due care, does not apply." And in that case it was further said: "We are therefore of opinion that the presumption

does not exist where there are, as in the case at bar, eye-witnesses to the accident.''

The tenth instruction given at the instance of appellee, was as follows:

''10. The court further instructs the jury that in order for the plaintiff to recover in this case, it is necessary for him to prove by a preponderance of the evidence that the following allegations in the declaration are true, to-wit: 1st. That the plaintiff's intestate, Frederick Weber, was killed at the time and place alleged in the declaration, and that he left him surviving a widow and next of kin as charged. 2nd. That the defendants were guilty of the negligence mentioned in the declaration or some one or more counts thereof in the manner charged in the declaration and that in consequence and by reason thereof the said Frederick Weber was killed. 3rd. That at the time of his death the said Frederick Weber was in the exercise of ordinary care for his own personal safety; and the other instructions of the court must be considered and construed by the jury in connection with this instruction; and if the jury believe from the evidence that the statements herein recited are true, a verdict should be rendered in favor of the plaintiff.''

This instruction is subject to the criticism that it limits the time when the deceased must have been in the exercise of ordinary care for his own safety, within too narrow a compass. And the error in the instruction in that regard is rather heightened than otherwise by the statement therein that ''the other instructions of the court must be considered and construed by the jury in connection with it; and if the jury believe from the evidence that the statements herein recited are true, a verdict should be rendered for the plaintiff.'' Notwithstanding other given instructions may have stated the rule in broader terms, more accurately, we think the language last quoted was calculated to direct the attention of the jury, in their application of the rule governing the deceased in the matter of the due care to be exercised by him, to the rule as stated in the

instruction in question in preference to or the exclusion of the true rule upon the subject announced in other instructions.

In North Chicago St. R. R. Co. v. Cossar, 203 Ill. 608, it was held that it was not proper in a personal injury case to give an instruction which limits the question of due care to the conduct of the plaintiff at the time of his injury, regardless of his conduct in placing himself in danger.

In Chicago Ry. Co. v. Ryan, 225 Ill. 287, it was held that the language in an instruction "at the time," referring to the time when the plaintiff must have been in the exercise of due care for his own safety, did not limit the exercise of due care to the precise moment of the accident, and the instruction there under consideration was thus distinguished from the instruction condemned in C., M. & St. P. Ry. Co. v. Halsey, 133 Ill. 248.

The instruction here involved comes within the condemnation of the decision in the Halsey case, *supra*.

The 37th instruction offered by appellants and refused by the court, is as follows:

"If the jury believe from the evidence that under all the facts and circumstances surrounding said Frederick Weber, shown by the evidence when he was driving along the said highway mentioned by the witnesses approaching and in near proximity to the crossing of said highway and said railroad, ordinary care and caution required that he should stop and look and listen to ascertain whether any locomotive engine or train was approaching said crossing on said railroad within such distance as to make it dangerous or unsafe to drive upon the said railroad at such crossing, then it was the duty of the said Frederick Weber to stop, look and listen before driving upon the said railroad at said crossing; and if the jury believe from the evidence that the said Frederick Weber neglected or failed to do so, and that if he had so stopped, looked and listened, he would have discovered or ascertained the approach of said locomotive engine and train in time sufficient to

have avoided the injury, then the plaintiff cannot recover in this case."

A similar instruction was under consideration by the court in Chicago City Ry. Co. v. O'Donnell, 208 Ill. 277, and the instruction was approved and its refusal was held to be error. The instruction is not subject to the criticism that it required the deceased, as a matter of law, to stop and look and listen, before he attempted to drive over the crossing. We have considered the objections urged to the action of the court in giving, refusing and modifying certain other instructions, but find no error in that regard.

For the errors indicated the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*