**William J. Jackson, Receiver, Appellant, v. Alice Johnson, Executrix, Appellee.**

1. AUTOMOBILES AND GARAGES, § 3*—*when giving of warning on approach of train to crossing is question for jury.* In an action by a railroad receiver against the executrix of the will of the deceased owner of an automobile to recover damages for injury to one of plaintiff's trains because of negligence of such owner in driving his automobile on the track, where there was a conflict in the evidence for plaintiff whether the whistle was blown for 80 rods before reaching the crossing and there was no evidence that the bell was not rung for that distance, defendant having offered no evidence, a question for the jury was presented.

2. INSTRUCTIONS, § 134*—*when instruction is erroneous as not confining jury to belief from evidence.* In an action by a railroad receiver against the executrix of the will of the deceased owner of an automobile to recover damages for injury to one of plaintiff's

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

trains because of negligence of such owner in driving his automobile on the tracks at a highway intersection, an instruction that if the jury believed that the collision between the railroad train and the automobile driven by deceased was occasioned purely through and on account of an accident and not on account of negligence on his part, then regardless of other questions in the case their verdict should be in favor of defendant, was misleading and erroneous in not confining the jury to their belief from the evidence.

3. NEGLIGENCE, § 156*—*when rule that jury may consider instinct of self-preservation and presumption arising from proof of habitual exercise of due care not applicable.* Where eyewitnesses have testified to facts and circumstances surrounding the accident, the rule which entitles a jury to consider the instinct of self-preservation and the presumption which may arise from proof of the habitual exercise of due care does not apply.

4. NEGLIGENCE, § 3*—*what is effect of excitement arising from imminent peril induced by own negligence on liability for.* A party who, without fault, is damaged by reason of the negligence of another while such other is under excitement arising from imminent peril induced by his own negligence is entitled to recover damages from the party who was the negligent cause of the injury.

5. NEGLIGENCE, § 234*—*when instruction on evidence as to liability of defendant is erroneous.* In an action for negligence, an instruction, that if the evidence was equally consistent with the theory that defendant was negligent the jury should find for defendant, was erroneous.

Appeal from the Circuit Court of Vermilion county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded. Opinion filed April 19, 1918. Rehearing denied July 2, 1918.

EDWARD C. CRAIG, DONALD B. CRAIG, H. M. STEELY and H. M. STEELY, JR., for appellant; HOMER T. DICK, of counsel.

EDWIN WINTER, ACTON & ACTON and REARICK & MEEKS, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action in case begun by William J. Jack-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

son as receiver of the Chicago and Eastern Illinois Railroad Company against Alice Johnson as executrix of the estate of Harper Daniel, deceased, to recover damages alleged to have been sustained by the derailing of a train of said railroad because of the negligence of Harper Daniel. The declaration contains several counts. One of the counts avers that on June 3, 1916, plaintiff was possessed of and operating a certain described double-track railroad from Danville to Chicago and was running over the east northbound track a passenger train; that at, to wit, 8 miles north of Danville, said railroad is crossed by an east and west highway; that defendant's testate, Harper Daniel, was running an automobile east on said highway at, to wit, 25 miles an hour towards said railroad while a passenger train was approaching from the south, in plain view of Harper Daniel, on which the bell on the locomotive was and had been ringing for more than 80 rods as the locomotive approached the crossing and crossing whistle had been given; that the said Daniel, without slacking speed, ran the automobile onto the track in front of the locomotive and caused the locomotive and automobile to collide and thereby caused the locomotive and cars to be derailed, broken and damaged and the tracks to be torn up; that at and before the time of the accident, plaintiff and his servants in charge of the train were in the exercise of ordinary care in running said train and in approaching the crossing, and said accident and collision occurred by and through the negligence of Daniel in running his automobile at such a high rate of speed and running the same upon the track in front of the locomotive by means of the premises, etc. Other counts allege negligence of Daniel in recklessly and negligently running his automobile and in failing to look and listen, and that employees in charge of the train were ringing the bell and blowing the whistle in compliance with the statute.

A jury returned a verdict for the defendant, on which judgment was rendered and from which plaintiff prosecutes this appeal.

The evidence of appellant shows that the collision occurred about 8 miles north of Danville and a mile south of Bismark. There the tracks of said railroad run north and south and are crossed at right angles by an east and west public highway; that about 700 feet west of the intersection of the railroad and the highway a public road runs north from the east and west highway to Bismark; that there is a signal tower òn the railroad 350 feet south of the highway that crosses the railroad for use in connection with some crossover and spur tracks in that vicinity; that there was a plank crossing approximately level with the ground on either side of the railroad; that the main tracks run directly south from the highway for about 120 rods where they curve slightly to the west. The east 20 rods of the field south of the highway and west of the railroad had been sown to oats and corn was planted west of the oats. The field west of the highway and north of the railroad was sown to oats up to the road to Bismark. Harper Daniel was a man over 70 years of age and somewhat hard of hearing. On June 3rd, about 2 o'clock in the afternoon, he, alone in an automobile, came south on the road from Bismark, turned onto the east and west road and ran his machine upon the railroad track in front of a passenger train and the collision resulted in the train being derailed, the tracks torn up and damage done to the extent of over $5,000. He and the engineer of the train were both killed.

There was a crossing sign at the crossing and there was nothing to interfere with the train being seen, for about a mile south of the intersection of the highway and the railroad, by a person on the east and west road at any place from the railroad west to the road

that ran to Bismark or on the south end of that road, neither was there anything on the railroad or in the fields that interfered with a clear view of a train approaching from the south for upwards of a mile. Many farmers and men working in the fields in that vicinity saw Daniel as he was approaching the crossing and testified concerning his actions. One witness going west in an automobile on the east side of the railroad stopped his machine and tried to signal to Daniel to stop, but he appeared to be looking down at his steering wheel and for some reason his attention could not be attracted. The fireman on the train saw him when the train was 400 to 500 feet from the crossing and Daniel was about 200 to 300 feet from the crossing, and as soon as he thought Daniel was not going to stop notified the engineer, who was at his station on the right-hand side of the locomotive, of the danger and he at once applied the emergency brake.

The fireman testified that the engine was equipped with an automatic bell that weighed 75 pounds and that the engineer started it ringing before they left Danville and it rang continuously up to the accident, and that the whistle was blown for crossings. Several other witnesses testified to hearing the bell ringing and several who saw the train heard the whistling but did not notice the bell ringing.

The appellant contends that the court should have instructed a verdict for it. The appellee contends that there is a conflict in the evidence as to whether the employees of the train caused either the bell to be rung or the whistle blown for 80 rods before reaching the crossing. While there is no evidence that the bell was not run for that distance, there were a number of witnesses who were watching the train and heard the whistle but did not hear the bell. While there is a preponderance of the evidence that the bell was rung for that distance, the fact that many watching the train did not notice that it was ringing inclines us to

leave the question of fact to be passed upon by another jury, as the appellee did not offer any evidence and the case must be reversed for errors of law.

A number of witnesses testified to seeing Daniel running his automobile from where he turned to go east to cross the railroad, and others saw his actions for 20 rods before he reached the track and described his actions up to the time of the collision.

The fifth instruction given the jury at the request of appellee is: "If you believe that the collision between the railroad train and the automobile driven by Harper Daniel, deceased, was occasioned purely through and on account of an accident, and not on account of negligence on his part, then regardless of all other questions in the case, your verdict should be in favor of the defendant." This instruction makes no reference to the evidence but gives the jury free scope to act as their imagination may incline them. It was misleading and erroneous in not confining the jury to their belief from the evidence.

The eleventh instruction given at the request of appellee is: "The court instructs you that where there was a collision, as in this case, between an automobile and a railroad train, upon a highway crossing, and if there is no evidence from which the jury can determine whether the driver of the automobile was in the exercise of ordinary care, the law indulges the inference that the instinct of preservation and of the love of life was such as to prompt him to exercise ordinary care for his own safety.

"And, while this inference, if any, is not conclusive it is a matter which may be considered by the jury in connection with all the evidence and all the facts and circumstances shown in evidence in the case."

The thirteenth is: "In determining whether the decedent, Harper Daniel, was guilty of negligence as charged, you have a right to consider, among other things, the natural instinct of self-preservation." The

rule is that: ''Where eyewitnesses have testified to the facts and circumstances surrounding the accident, the rule which entitles a jury to consider the instinct of self-preservation and the presumption which may arise from proof of the habitual exercise of due care does not apply.'' *Collison v. Illinois Cent. R. Co.,* 239 Ill. 537; *Illinois Cent. R. Co. v. Nowicki,* 148 Ill. 29; *Illinois Cent. R. Co. v. Kief,* 111 Ill. App. 354; *Devine v. Chicago City Ry. Co.,* 188 Ill. App. 558; 8 Encyc. of Ev. 897. The giving of these instructions was reversible error.

The tenth instruction informs the jury that if they believe from the evidence that Daniel approached the crossing with reasonable care and while so doing he was suddenly confronted with grave danger, and thereupon became excited and unable to do what was required in controlling his automobile or in avoiding a collision, and if he was at all times acting as an ordinarily prudent man would act under the same circumstances; ''or, if the evidence is equally consistent with the theory that he was negligent''; or, if the evidence balanced on these points, in either case your duty is to find a verdict for the defendant.

The first part of the instruction is erroneous in not requiring the jury to find from the evidence that the excitement caused by a situation of imminent peril that will relieve a party from ordinary care must be caused by the negligence of the other party. *Chicago & A. R. Co. v. Corson,* 198 Ill. 102. A party, who without fault, is damaged by reason of the negligence of another while such other is under excitement arising from imminent peril induced by his own negligence is entitled to recover damages from the party who was the negligent cause of the injury. The next paragraph tells the jury that ''if the evidence is equally consistent with the theory that he was negligent'' they will find for the defendant. Under this paragraph of the instruction if the negligence of defendant is proved

still the jury will find for the defendant. Under this instruction no matter how negligent Daniel was they will find for the defendant on that question.

For the reasons pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*